Case 4:23-cv-02399   Document 43   Filed on 02/21/25 in TXSD   Page 1 of 10

United States District Court
Southern District of Texas
**ENTERED**
February 21, 2025
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ADRIAN PERKINS, | § | |
| *Plaintiff*, | § § § | |
| v. | § | CIVIL ACTION NO. 4:23-cv-2399 |
| UNITED STATES OF AMERICA, | § § § | |
| *Defendant*. | § § § | |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

After considering the evidence presented at trial and the arguments of counsel, this Court makes the following findings of fact and conclusions of law. All factual statements are to be considered findings of fact and all legal conclusions are to be considered conclusions of law regardless as to whether they are made in paragraph form or made in numbered statements.

### I.   Introduction

This dispute arises from an alleged injury that occurred when Plaintiff Adrian Perkins ("Plaintiff" or "Perkins") was delivering packages to the United States Postal Service office located at 9450 Pinecroft Drive, Spring, Texas 77380 (the "Post Office"). Plaintiff alleges that he was injured when a "heavy, metal loading ramp" fell and struck Plaintiff on the head after Plaintiff moved a box that was concealing the ramp (the "Accident"). As such, Perkins sued the United States of America for the allegedly dangerous condition on the premises of the Post Office.

Perkins claims that Defendant is liable for its negligence under the Federal Tort Claims Act ("FTCA"). (Doc. No. 14 at 4). In a prior order, the Court dismissed Plaintiff's negligent activity claim. (Doc. No. 26). Plaintiff's only remaining claim is one for premises liability. Plaintiff alleges that Defendant: 1) positioned the loading ramp in an unreasonable location, in an unsafe position, and obscured from view; 2) failed to warn Plaintiff that the ramp was susceptible to

1

falling over and causing injury; and 3) failed to inspect the loading dock to ensure boxes did not obscure a hazard "like a falling metal loading ramp." (Doc. No. 14 at 5).

Defendant contends that it was not negligent because the ramp (and/or its positioning) did not pose an unreasonable risk of harm, but even if it did, the alleged dangerous condition was open and obvious. Alternatively, Defendant pleads that Perkins is contributorily negligent. Defendant alleges that Perkins had no reason to move any box that was in front of the ramp, and thus contributed to his alleged injuries.

## II. Findings of Fact

1. On February 24, 2022, Plaintiff was working as an independent contractor for ADP Logistics, LLC.

2. Perkins owns ADP Logistics. ADP Logistics contracted with another company, STAT Overnight Delivery. STAT contracted with DHL Group, who ultimately contracted with the Post Office as a third-party delivery service.

3. The Post Office regularly accepts packages at its rear loading dock from independent contractors working for third-party delivery services, including Perkins.

4. On February 24, 2022, Defendant owned a heavy, metal loading ramp for the benefit of third-party delivery drivers. The third-party delivery drivers would often use the ramp to bridge the gap between the loading dock and their delivery trucks in order to offload packages onto the loading dock.

5. Plaintiff's box truck had a movable lift. Consequently, he rarely, if ever, used the ramp.

6. Perkins delivered packages to the Post Office six days a week for roughly one year prior to the Accident.

7. On February 24, 2022 at approximately 6:00 a.m., Plaintiff was delivering packages to the Post Office. At that time, the following events occurred:

   a. Plaintiff backed his box truck to the loading dock of the Post Office to unload packages.

   b. Plaintiff exited his truck, opened the back of the box truck, and raised the truck's lift until its height was level with the loading dock. Plaintiff then walked up the stairs to the loading dock.

   c. Once on the dock, Plaintiff grabbed an empty, large box. Plaintiff intended to fill this box with packages from his truck because it was a more efficient way to unload his truck, rather than carrying each package individually. It was Plaintiff's standard practice to use this large box to unload packages from his truck.

   d. At that time, a metal loading ramp was positioned between a wall and the box that Plaintiff sought to use. This was not an unusual position for the ramp. In fact, the day after the Accident, Plaintiff took a picture of the ramp leaning between a wall and a box just as it was the day of the accident. Moreover, Tafarnia Mott, the Post Office Manager on the day of the Accident, testified that the ramp was leaned against the wall each morning when she inspected the loading dock.

   e. Plaintiff did not see the ramp because the box he sought to use was obstructing his view of the ramp from the angle at which he approached the box.

   f. To move the box in the direction of his truck, Plaintiff grabbed the box from the side opposite the ramp and quickly rotated the box 180°. Thus, the box went from being between Plaintiff and the ramp to the Plaintiff being between the box and the ramp. The ramp then fell and struck Plaintiff's head.

8. Plaintiff did not see the position of the ramp and cannot explain how it fell. Nevertheless, there are three possible ways the ramp could have fallen:

   a. First, the ramp could have been leaning on the box. Thus, when Plaintiff moved the box, the ramp lost its source of support and tipped over. The box, however, while large, was empty. The only evidence provided regarding the weight of the ramp estimates it to weigh roughly 80 to 100 pounds and its weight against the empty box would have been significant. An individual moving a box in this scenario would have felt the weight of the ramp on the box at the time he/she initiated the movement, and should have taken steps to prevent its fall. This theory, therefore, seems unlikely.

   b. Second, the ramp could have been leaning against the wall (as in the pictures provided by Plaintiff). Plaintiff delivered packages to the Post Office six days a week for roughly a year before the Accident. Nevertheless, he claims never to have seen the ramp before the Accident. Plaintiff, however, also proffered photos of the ramp in locations other than propped against the wall behind the box. Thus, it seemly unlikely that someone who was on the loading dock six days a week, where the ramp apparently moved locations frequently, never saw the ramp for almost a full year before the Accident. Most significantly, if the ramp were leaning against the wall (where it was often stored), the accident could only happen if Plaintiff had hit the ramp with the box as he moved it.

   c. Finally, Plaintiff's counsel theorized that vibrations through the floor of the loading dock could have caused the ramp to fall. The third theory seems highly unlikely, if not impossible, since the floor of the loading dock is made of concrete. Plaintiff

offered no evidence that pinpoints the source of any vibration, much less one strong enough to cause an 80-to-100-pound object to fall. Therefore, there is no evidence to support such a theory.

    d. The Court finds that the ramp could have been already leaning against the box, but it seems unlikely that Plaintiff would not have immediately perceived its weight either before or as he turned the box. Thus, more likely than not, Plaintiff hit the ramp while moving the box, causing the ramp to fall.

9. When the ramp fell, it hit Perkins on his head. Perkins sustained injuries to his head, neck, and also alleges injury to his lower back. No one witnessed the Accident.

10. Nevertheless, the Court finds that Perkins was indeed at the Post Office the morning of the Accident. Perkins orally reported the Accident to a Post Office employee, Charles Lovelady, on February 24, 2022—the day of the Accident. Additionally, the Post Office log also documents Perkins presence at that location on that day—although it does not mention details about the Accident.

11. While Mr. Lovelady admits Perkins reported the Accident to him that same day, he did not report the Accident to Post Office management until August 4, 2023. Mr. Lovelady's August 4, 2023 letter to management states in its entirety:

> I don't remember the exact dates but I remember the incident. DHL driver was getting empty equipment to unload and portable ramp lending [sic] on another piece of equipment fell striking him in the head.

12. Mr. Lovelady testified that he did not witness the accident, but merely was repeating what he was told by Plaintiff.

13. Plaintiff sought medical treatment at Memorial Hermann Katy hospital the night of the Accident. In the months that followed, Plaintiff also sought treatment at Core Health, Elite Health Services, Olympic Spine & Joint, and Champions Choice Pain & Injury Clinics.

14. Plaintiff's last medical treatment relating to his injuries from the Accident was on May 25, 2022. Perkins told his providers that, while he was still experiencing some pain, he did not wish to undergo the recommended treatments for personal reasons.[1]

15. On November 15, 2022, Perkins, through Counsel, filed a "Claim for Damage, Injury, or Death" with the National Torts Center in St. Louis, Missouri (the "DID Claim"). The DID Claim included the following summary of facts:

> On February 24, 2022, Mr. Perkins, was working as an independent contractor for ADP Logistics, LLC and was delivering packages to the United States Postal Service Office located at 9450 Pinecroft Drive, Spring, Texas 77380. A metal loading ramp was placed upwards against the wall and was left unattended, and as Mr. Perkins walked past the metal loading ramp, it violently fell directly onto the top of his head. Immediately after, Mr. Perkins began experiencing pain and discomfort.

16. The Court notes that Plaintiff's DID Claim differed materially from his factual allegations in his First Amended Complaint and his trial testimony. This is important as the difference directly concerns how the accident happened. As seen above, his DID Claim states only that the ramp fell onto Plaintiff as he "walked past" the ramp. It omits any reference to Plaintiff moving a box placed adjacent to the ramp. Conversely, at trial, Perkins testified that it was not until he moved an empty box that the heavy ramp fell on him—a notable difference.

---

[1] Plaintiff's medical provider from Olympic Spine & Joint recommended steroid injections in Plaintiff's neck and back. That same provider also noted the Perkins may need a subsequent back surgery if the steroid injections were unsuccessful. Plaintiff ultimately refused both the injections and the back surgery because he rarely saw the benefit of those treatments during the time he worked as a Licensed Vocational Nurse prior to his employment with ADP Logistics.

17. The loading dock did not have any signs, posted instructions, or warnings regarding the ramp or its use.

18. The ramp at issue had been in use at the Post Office for years without any reported incidents or complaints.

### III.   Conclusions of Law

1. Defendant may be held liable under the FTCA in accordance with Texas substantive law.

    a. The United States may be held liable "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b).

2. Plaintiff's only remaining theory of liability against Defendant is a claim for premises liability under Texas law.

    a. To prevail on a premises-liability claim, a plaintiff-invitee must show: "(1) that [the defendant] had actual or constructive knowledge of some condition on the premises; (2) that the condition posed an unreasonable risk of harm; (3) that [the defendant] did not exercise reasonable care to reduce or eliminate the risk; and (4) that [the defendant's] failure to use reasonable care proximately caused the plaintiff's injuries." *Motel 6 G.P., Inc. v. Lopez*, 929 S.W.2d 1, 3 (Tex. 1996).

3. Defendant owed a duty to Plaintiff because Plaintiff was an independent contractor and, thus, an invitee at the time of the accident.

    a. Independent contractors are treated as invitees. *See Gen. Elec. Co. v. Mortiz*, 257 S.W.3d 211, 217 (Tex. 2008). It is undisputed that Perkins was an invitee on February 24, 2022.

    b. A property owner has a duty to inspect the premises and warn an independent contractor/invitee of conditions or defects "that are not open and obvious and that the owner knows or should have known exists." *Coastal Marine Serv. of Tex., Inc. v. Lawrence*, 988 S.W.2d 223, 225 (Tex. 1999).

4. The ramp and its positioning did not pose an unreasonable risk of harm.

    a. The Court does not disagree that a heavy, metal ramp leaning against a wall, if dislodged, *could* injure an invitee. Nevertheless, the potential that the ramp may injure an invitee is not evidence that it poses an unreasonable risk of harm. *See United Supermarkets, LLC v. McIntire*, 646 S.W.3d 800, 804 (Tex. 2022) ("[T]estimony that a condition *could* injure an invitee is not evidence that it poses an unreasonable risk of harm.")(emphasis in original).

    b. Logically, to determine whether something is unreasonably dangerous, one must consider the context or circumstances of the situation. The Post Office provided the metal ramp for use by delivery drivers. Defendant provided persuasive evidence that the ramp was stored upright, out of the way of workers moving boxes on, off, and around the loading dock. It was stored in this manner to provide easy access to the ramp so that delivery drivers may access it quickly. There has never been an accident involving the ramp reported before or since the Accident. A stationary loading ramp stored adjacent to the main walkway on a loading dock, access to which is given only to those who would utilize the ramp, cannot be said to be an

unreasonably dangerous condition.[2] While there may be *some* risk of injury, it was clearly not an unreasonable risk.

c. Additionally, "[l]andowners are not 'insurer[s] of [a] visitor's safety,' and they are not obligated to make the premises 'foolproof.'" *Id.* (quoting *Del Lago Partners, Inc. v. Smith*, 307 S.W.3d 762, 769 (Tex. 2010)). Perhaps it is true that the Post Office could have stored the ramp in a safer manner (e.g. strapping it to the wall or leaning it horizontally against the wall—although the former may affect its ease-of-access and the latter might lead to more back injuries). That does not mean that the way that it was stored or placed on the day of the Accident made the risk of harm unreasonable. Simply because an object can cause harm when enough force is applied (such as a person knocking an object down, even if accidently) does not make the object unreasonably dangerous.

d. Moreover, while deciding that a pedestrian ramp did not pose an unreasonable risk of harm, the Supreme Court of Texas considered the fact that "[n]o other customer visiting the property over a ten-year period had ever been injured by the ramp, nor has the [defendant] received complaints about the ramp's safety." *Brinson Ford, Inc. v. Alger*, 228 S.W.3d 161, 163 (Tex. 2007); *see also Seideneck v. Cal Bayreuther Assocs.*, 451 S.W.2d 752, 754 (Tex. 1970) (Considering that there was no evidence that anyone had previously been injured by the condition when determining that the condition was not unreasonably dangerous). Here, although the loading ramp had been used and similarly stored by delivery drivers for years,

---

[2] An example may help illustrate the Court's rationale. A hammer stored on a shelf with easy access for all at a construction site with only construction workers around might not be unreasonably dangerous. A hammer stored on a shelf in the middle of a kindergarten class, however, might be unreasonably dangerous.

9

the Post Office had never received any report of injury caused by the ramp before Plaintiff's Accident.

e. Further, "[a]n invitee in a premises-liability case 'must prove that the premises owner had actual or constructive knowledge of a dangerous condition on the premises.'" *Albertsons, LLC v. Mohammadi*, 689 S.W.3d 313, 317 (Tex. 2024) (quoting *Wal-Mart Stores, Inc. v. Reece*, 81 S.W.3d 812, 813 (Tex. 2002). Defendant had actual notice of the ramp itself. Still, given the Court's earlier finding, Defendant did not have actual or constructive knowledge that a dangerous condition existed at the time of the Accident. There had never been any problem with the ramp or the manner in which it was stored; consequently, there is no evidence for this Court to base a conclusion that the Post Office knew or should have known about an unreasonably dangerous condition and then failed to take steps to warn its invitees.

### IV.   Conclusion

Based on the above-referenced findings of fact and conclusions of law, the Court finds for Defendant—the ramp did not pose an unreasonable risk of harm and, therefore, Defendant is not liable under a premises-liability theory of negligence. A separate take-nothing judgment will be entered pursuant to the Federal Rules of Civil Procedure.

Signed at Houston, Texas, on this the 21st day of February, 2025.

Andrew S. Hanen
United States District Judge